IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 06-00278-KD |
| | ) | (Civil Action No. 11-00463-KD-N) |
| DAVID MARK YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on Defendant/Petitioner David Mark Young's second

motion[1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 159), as

amended (doc. 163).[2] This matter has been referred to the undersigned Magistrate Judge for entry

of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of

the petitioner's § 2255 motion and all other pertinent portions of the record, it is the

recommendation of the undersigned that the § 2255 motion be **DENIED.**

I.      BACKGROUND

A.      Procedural History.

On December 27, 2006, Young and co-defendant Timothy Cox were charged in a three

count indictment with conspiracy to distribute over 100 kilograms of marijuana (Count One) and

possession of marijuana with the intent to distribute (Counts Two and Three), in violation of 18

U.S.C. §§846 and 841(a)(1).  (Doc. 1).  Young was arraigned on October 7, 2009, nearly three

years after he was indicted, and appeared with his retained counsel, Joseph Carl "Buzz" Jordan.

---

[1] Young's first § 2255 motion (doc. 141) was dismissed, without prejudice, as premature on
September 6, 2011 (docs. 145-146).

[2] Young has also filed a motion (doc. 171) to amend his § 2255 motion by adding a new issue
that his appellate counsel, Andrew Jones, was "innefective due to failing to raise the Rule 44(c) issue on
appeal."  For the reasons stated in the body of this Report and Recommendation, this motion to amend is
**MOOT**.

1

(Doc. 25).  On October 28, 2009, the United states filed a notice pursuant to 21 U.S.C. § 851(a)

that, due to Young's 1991 federal drug conviction, the mandatory minimum term of

imprisonment for Counts One and Two was increased from five years to ten. (Doc. 32).

On December 22, 2009, Young pleaded guilty to the conspiracy count pursuant to a

written plea agreement.  In bold lettering, the plea agreement stated that by virtue of the

enhancement notice filed on October 28, 2009 (doc. 32), Young would be facing a minimum

mandatory sentence of 10 years rather than five.  (Doc. 43 at 3)("**However, based upon the

Enhancement Information, filed by the United states in the case, the defendant is subject to

a minimum mandatory ten years confinement to life in prison, on Count One. . .**")(emphasis

in original). In the factual resume, Young agreed that during the time frame of the conspiracy he

stored shipments of marijuana on his property that his nephew, Norman Young, had procured.

(*Id*. at 2).  Further, Young agreed that he and co-defendant Cox sold five pound of marijuana to

an informant during a controlled buy, and officers recovered 738 marijuana plants and empty

wrappings for approximately 500 pounds of marijuana during a search of his property. (*Id*.).

Finally, Young admitted "his responsibility for the above stated marijuana and marijuana plant

amounts and for in excess of 100 kilograms of marijuana as being involved in the conspiracy for

purposes of relevant conduct."  (*Id*. at 2-3.

During the plea colloquy, Young stated that he had read the plea agreement and discussed

it with his attorney.  (Doc. 116 at 3-4)  Young was fully aware that he faced a mandatory

minimum sentence of ten years, as the following exchange between he and the Court

demonstrates:

> Q. Now, your penalties in this case, because of the prior conviction, 10 years to
> life, $4 million fine, 8 years supervised release and a hundred dollar special
> assessment. Were you aware that it was a 10-year minimum mandatory in your
> case?
>
> A. Yes, ma'am.

> Q. Okay. And you understand when I say '10-year minimum mandatory,' I am required to give you 10 years, unless the United States attorney's office files a motion asking that I go below that. Do you understand that?
>
> A. Yes, ma'am, I do.

(*Id*. at 5). Young agreed that no one had forced him to plead guilty. (*Id*. at 6). He further agreed that the United States could prove everything set out in the factual resume he signed, including his responsibility for more than 100 kilograms of marijuana. (*Id*. at 7-9).

On October 29. 2010, Young filed a motion seeking to set aside his plea on the grounds that his attorney, Jordan, had a conflict of interest based on his previous representation of Tammy Young, who Young alleges had provided information against him to the government. (Doc. 62 at 1-2). This conflict, according to Young, led Jordan to "manipulate" him into involuntarily pleading guilty. (*Id*. at 2).

Before Young's scheduled sentencing on November 10, 2010, the Court conducted an *in camera* hearing regarding his complaints about Jordan. (Doc. 126). The Court explained that Young had retained Jordan, and he had the option to hire another attorney if he so wished. (*Id*. at 2-3). The Court then asked Young if he wanted to move forward with Jordan as his attorney. (*Id*. at 4). In response, Young initially claimed that he was "at a loss as to what to do. . . ." (*Id*. at 4). The Court proposed that Young either move forward with Jordan, or it would give him a week to retain another attorney. (*Id*. 10). In response to the Court's proposal, Young declared, "I'm ready. I will just keep Mr. Jordan." (*Id*.). Young's sentencing was continued until a later date so that he could participate in a proffer and the United States could evaluate his attempted assistance. (*Id*. at 13-14).

Prior to his re-scheduled sentencing, Young filed motions notifying the Court that he had terminated Jordan and seeking the appointment of new counsel. (Docs. 67, 69). These motions were granted and Andrew Jones was appointed by the Court to represent Young. (Doc. 74). Among the motions thereafter filed by Young's new attorney was a motion seeking to withdraw

Young's guilty plea because the United States had reneged on its agreement to file a U.S.S.G. § 5K1.1 departure motion at his sentencing. (Doc. 79). Jones also filed a motion to dismiss, arguing that the United States' prosecution of Young for a marijuana offense, despite the fact that several states had legalized the drug for medicinal purposes, amounted to selective prosecution and violated his equal protection rights. (Docs. 81, 85, 91). Jones also filed a separate motion to dismiss on the grounds that the drug amounts associated with dismissed counts two and three, and included as relevant conduct, could not be used to determine the maximum statutory penalty under 21 U.S.C. § 841, as well as a separate amended position regarding the sentencing factors. (Docs. 86-87). In a subsequent sentencing memorandum, Jones argued that the Court should treat marijuana as a Schedule V controlled substance for sentencing purposes. (Doc. 96). The Court denied these motions. (Docs. 94, 98).

Young's presentence investigative report ("PSR") determined his base offense level to be 26 due to his admitted accountability for the distribution of at least 100 kilograms of marijuana. (Doc. 97 at ¶ 21). Young's base offense level was reduced by three points for acceptance of responsibility, giving him a total offense level of 23. (*Id*. at ¶¶ 27-29). During Young's sentencing, Jones objected to the sentencing guideline determination based on the same the arguments previously raised in the motions to dismiss and the Court summarily overruled these objections. (Doc. 177 at 2–7, 15-16). The Court found that Young was responsible for a minimum of 100 kilograms of marijuana because that was the amount involved according to Young's acknowledgment in his plea agreement (*Id*. 4-5, 8-9, 16). The Court sentenced Young to the mandatory minimum 10-year term of imprisonment on April 15, 2011 and entered judgment on May 5, 2011. (Doc. 106).

On April 22, 2011, a motion to reconsider the sentence was prepared by Young *pro se*

and filed on his behalf by Jones. (Docs. 99, 100)[3]. The Court denied Young's motion on April 28, 2011, by endorsement (doc. 102).

Young filed a Notice of appeal on April 28, 2011 (doc. 104). Jones was appointed by the Eleventh Circuit to represent Young on appeal. (Doc. 114). The only issue raised on appeal was whether the district court properly denied Young's motion to withdraw his guilty plea. (Doc. 152). On June 27, 2012, the Eleventh Circuit affirmed the District court's denial of Young's motion to withdraw his guilty plea. (*Id.*). The mandate issued on January 18, 2013. (Doc. 153). A petition for rehearing was denied on January 9, 2013. (Doc. 159 at 105).

B.     Habeas Petition.

Young filed the present § 2255 motion on July 8, 2013 (doc. 159), seeking to have his conviction and sentence set aside on the following four grounds:[4] (1) the violation of his equal protection rights and the unconstitutionality of 21 U.S.C. §§ 812(b) and 841(b)(1)(B)(vii), as applied;[5] (2) ineffective assistance of plea, sentencing and appellate counsels;[6] (3) the Court's

---

[3] According to Jones, he advised Young not to file this motion but his client insisted. (Doc. 100 at ¶ 1).

[4] Young initially sets forth in his "STATEMENT OF ISSUES" these four general grounds (doc. 159 at iii), but then subsequently divides his argument into eight, often overlapping, issues (*id*. at 1-29). The undersigned will address the issues as they relate to the four general grounds.

[5] Young argues, in sum, that, in view of the many States that have legalized marijuana for medical use or otherwise, "[t]he continued prosecution of citizens in any state for violation of federal drug laws in connection with the possession & distribution of marijuana under any federal substance schedule is discrimination of civil rights & intentional violation of the Ninth & Fourteenth Amendment[s] for purposely failing to ensure the Equal Protection of the Law for all citizens as a whole." (Doc. 159 at 8). Young thus challenges the constitutionality of 21 U.S.C. §§ 812(b) and 841(b)(1)(B)(vii) as applied and, specifically the classification of marijuana as a Schedule I substance. (Docs. 159 at 5, 170 at 1-5).

[6] Young concedes that sentencing counsel filed a motion to dismiss and opposed the guideline calculations based on the argument he asserts in "Issue 1" (*see* n. 4, *supra*), but argues that counsel failed to pursue the issue on appeal. (Doc. 150 at 4-5).

failure to conduct a hearing pursuant to Fed. R. Crim.P. 44(c) to determine if Young's guilty plea was a product of coercion;[7] and (4) a Fifth Amendment double jeopardy violation and a Sixth Amendment substantive due process violation have occurred by virtue of the retroactive application of Alleyne v. United States, 113 S.Ct. 2151 (2013).[8]

On October 10, 2013, the United States responded in opposition to Young's motion to vacate, set aside, or correct sentence. (Doc. 167). The government contends that Young's §2255 motion should be summarily denied or dismissed, in sum, because Young's plea "not only waives any collateral attack of the plea itself, but also any pre-plea matters" and he has, in any event, procedurally defaulted on his current constitutional challenge. (*Id*. at 7-8). The United States further argues that Young fails to show that his counsel, either plea, sentencing or appellate, was deficient or that the result of the proceedings would have been different but for his counsel's allegedly deficient performance. (*Id*. at 8-12, 15-16). The government also asserts that Young has failed to establish that an actual conflict of interest existed at the time of his plea due to his counsel's past representation of Tammy Young in a different, although related, case (*id.* at 12-15), and that any claim of error for failure to conduct a Rule 44(c) hearing is not only procedurally barred but without merit (*id.* at 16-17). The government further argues that Alleyne has not been retroactively applied to cases on collateral review and, in any event, is not

---

[7] Young argues, in sum, that his retained counsel, Joe Jordan, coerced him to plead guilty to avoid exposure of unethical conduct by Mr. Jordan in accepting Young's retainer when there existed a conflict of interest because mr. Jordan had represented Tammy Forbes Young, a potential witness against Young if he went to trial. (Doc. 159 at 6-11).

[8] Young argues, in sum, that his Fifth Amendment rights were violated when the Court held him accountable for less than 100 kilograms of marijuana in connection with the Count I conspiracy charge but continued to hold him accountable for the 400 kg at issue in the counts dismissed under the plea agreement (doc. 159 at 19); and that his Sixth Amendment rights were violated by plea counsel's withholding information that would have "barred the evidence in the factual resume to impose the penalty of 841(b)(1)(B) mandatory penalty" (*Id*. at 31).

applicable to Young because he admitted in his plea agreement and colloquy to a prior drug conviction and to the drug amount giving rise to his mandatory ten year sentence (*id.* at 17-21).

The issues have been fully briefed and are ripe for adjudication. There is no need for an evidentiary hearing because Young's claims can be resolved based on the existing record. Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983)(" An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record."); *see also* Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)("[D]istrict court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous."); United States v. Mobley, 2013 WL 4166553, *22 (S.D. Ala., August 15, 2013)("There is no need for an evidentiary hearing [because] [o]n the existing record, Mobely has not presented non-conclusory facts that, if true, would entitle her to relief.").

## II.     STATEMENT OF THE LAW

A.    Habeas Standard.

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also* Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of the collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, '[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 WL 3200694 at *3 (S.D. Ala. 2008).

B.    Procedural Default.

A habeas petitioner is generally barred from raising a claim in a § 2255 motion that he did not raise on direct appeal. The Eleventh Circuit Court of Appeals has summarized this principle as follows:

> Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge. Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). A defendant cannot overcome this procedural bar unless he can demonstrate a cause for this default and show actual prejudice suffered as a result of this alleged error. *Id.* In the alternative, a defendant can also overcome this procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of showing of cause for the procedural default." *Id.* (*quoting* Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d. 397 (1986)).

United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005). However, claims of ineffective assistance of counsel fall outside the procedural default rule and, in most cases are properly raised for the first time in a habeas petition. Massaro v. United States, 538 U.S. 500, 504 (2003).

    C.    Strickland v. Washington Standard.

A two-fold analysis must be applied to claims of ineffective assistance of counsel, as set forth by the Supreme Court and the Eleventh Circuit:

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89, 104 S.Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064.

> Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. *Id.* As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id.* at 697, 104 S.Ct. 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d

655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). . . .

> To establish prejudice, a petitioner must show "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* [P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect of the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (*quoting* Strickland, 466 U.S. at 693, 104 S.Ct. at 2067).

United States v. Butcher, 368 F.3d 1290, 1293-94 (11th Cir. 2004). In making the performance determination, conduct must be evaluated from the attorney's perspective at the time in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689; *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009)(" a court must avoid 'the distorting effects of hindsight' and must 'evaluate the conduct from counsel's perspective at the time'."). In guilty plea cases, the prejudice showing requires a defendant to demonstrate that, but for alleged ineffective assistance of counsel, the defendant would not have pleaded guilty. Hill v. Lockhart, 472 U.S. 52, 59 (1985). Given the petitioner's exacting burden, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*).

D.    Rule 44(c) Inquiry.

Rule 44(c) of the Federal Rules of Criminal Procedure[9] establishes a procedures for avoiding the occurrence of events which might give rise to a plausible post-conviction claim that

---

[9] *See* Fed. R. Crim. P. 44(c) ("Whenever two or more defendants have been jointly charged ... or have been joined for trial ... and are represented by the same retained or assigned counsel ..., the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that (Continued)

the *joined defendants* in a criminal case were deprived of their Sixth Amendment right to effective assistance of counsel because they were jointly represented by the same attorney. Rule 44(c) has been held to be "confined to conflicts arising from joint representation" and not to conflicts alleged to arise from counsel's former representation of a witness. United States v. Morris, 1998 WL 738546, *2 (4th Cir. 1998), *citing* Cerro v. United States, 872 F.2d 780, 786-87 (7th Cir.1989); and United States v. Pungitore, 910 F.2d 1084, 1140-41 (3d Cir.1990) (refusing to expand application of Rule 44(c) beyond its plain meaning). *But see*, United States v. Gallegos, in which the court held:

> A defendant's right to the effective assistance of counsel includes a right to " 'representation that is free from conflicts of interest.' " United States v. Cook, 45 F.3d 388, 393 (10th Cir.1995)(*quoting* Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981)). This right to conflict-free representation " 'extends to any situation in which a defendant's counsel owes conflicting duties to that defendant and some other third person.' " *Id*. (*quoting* United States v. Soto Hernandez, 849 F.2d 1325, 1328 (10th Cir. 1988)).

108 F.3d 1272, 1280 (10th Cir. 1997). Regardless of the view about whether Rule 44(c) applies only to joint representation of co-defendants, it is clear that Rule 44(c) requires the existence of an actual conflict of interest. "Where an ineffective assistance claim is based on a conflict of interest, a petitioner 'must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance'." United States v. Mobley, 2013 WL 4166553, *10 (S.D. Ala., August 15, 2013), *quoting* Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001); and Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). The Eleventh Circuit has described the requisite showing as follows:

> "An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.' " Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir.1999)(*en*

---

there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.").

*banc*)(citation omitted). The inquiry into the existence of an actual conflict is "fact-specific." United States v. Novaton, 271 F.3d 968, 1011 (11th Cir. 2001). The petitioner must show an "actual conflict," because ***a speculative or merely hypothetical conflict of interest does not yield a Sixth Amendment violation***. Reynolds [v. Chapman], 253 F.3d [1337], 1342–43 [(11th Cir. 2001)]. To prove adverse effect, a petitioner must demonstrate three elements: (1) "that the defense attorney could have pursued a plausible alternative strategy"; (2) "that this alternative was reasonable"; and (3) "that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Id.* at 1343. "If there is a guilty plea involved, this Court looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." Pegg, 253 F.3d at 1278.

Aguilar-Garcia v. United States, 517 Fed.Appx. 880, 882 (11th Cir., April 26, 2013) (emphasis added). *See also*, McCorkle v. United States, 325 Fed.Appx. 804, 808 (11th Cir. 2009)(To establish an actual conflict of interest, a defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to [himself].").   The Supreme Court also addressed the conflict of interest issue as it relates to a guilty plea as follows:

> Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972), presented a contrasting situation. Dukes pleaded guilty on the advice of two lawyers, one of whom also represented Dukes' codefendants on an unrelated charge. Dukes later learned that this lawyer had sought leniency for the codefendants by arguing that their cooperation with the police induced Dukes to plead guilty. Dukes argued in this Court that his lawyer's conflict of interest had infected his plea. We found " '***nothing in the record . . . which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the plea in question involuntary and unintelligent***.' " *Id*., at 256, 92 S.Ct., at 1554, *quoting* Dukes v. Warden, 161 Conn. 337, 344, 288 A.2d 58, 62 (1971). Since Dukes did not identify an actual lapse in representation, we affirmed the denial of the habeas corpus relief.

Cuyler v. Sullivan, 446 U.S. 335, 349 (1980)(emphasis added).

### III.    ANALYSIS.

A.    Equal Protection Claim and Constitutionality of §§ 812(b) and 841(b)(1)(B)(vii).

Young first contends that his equal protection rights have been violated and that 21 U.S.C. §§ 812(b) and 841(b)(1)(B)(vii) are unconstitutional as applied. Young argues, in sum, that it is unconstitutional for the government to continue to classify marijuana as a Schedule I controlled substance and to prosecute the distributors of this drug because several States have legalized its dispensing for medical purposes. (Docs. 159 at 7-11, 170 at 1-5). Young raised this contention for the first time after pleading guilty, firing his counsel and obtaining new counsel. (Docs. 43, 45, 67, 69, 72, 74, 81). Young's ability to collaterally attack his guilty plea is greatly limited. The Supreme Court has declared:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting Sunal v. Large, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591, 91 L.Ed. 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).
>
> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643-2644, 91 L.Ed.2d 397 (1986); Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-2507, 53 L.Ed.2d 594 (1977), or that he is "actually innocent," Murray, supra, at 496, 106 S.Ct., at 2649-2650; Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667-2668, 91 L.Ed.2d 434 (1986).

Bousley v. United States, 523 U.S. 614, 621 (1998)(emphasis added). See also United States v. Boce, 488 U.S. 563, 569 (1989)("[J]ust as the guilty pleas in the Brady trilogy[10] were found to

---

[10] The "Brady trilogy" referred to in Boce, includes Brady v. United States, 397 U.S. 742, 750 (1970); McMann v. Richardson, 397 U.S. 759, 770 (1970), and Parker v. North Carolina, 397 U.S. 790 (1970). In each of these cases, the Supreme Court refused to address the merits of the claimed constitutional deprivations that occurred prior to the guilty plea. Instead, it concluded in each case that the issue was not the merits of these constitutional claims as such, but rather whether the guilty plea had been (Continued)

foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury."), *quoting* Tollett v. Henderson, 411 U.S. 258, 266 (1973). "A defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997), *quoting* United States v. Yunis, 723 F.2d 795, 796 (11th Cir.1984).

"[T]here is a strong presumption that statements made during the plea colloquy are true." *See* United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). Despite Young's present contention that his plea was coerced, he pleaded guilty and confirmed under oath and in writing both his willingness to plead and his guilt. (Doc. 116.) In his guilty plea, Young declared that he understood he had the right to be represented by an attorney and the right to plead not guilty. *Id*. at 6. The plea agreement was explicitly clear and unambiguous. Young attested in his guilty plea that:

> "[Young] has had the benefit of legal counsel in negotiating this plea agreement. He has discussed the facts of the case with his attorney and his attorney has explained to [Young] the essential legal elements of the criminal charge(s) which has been brought against him. ***[Young's] attorney has also explained to [Young] his understanding of the United States' evidence***."

(Doc. 43 at 2). Young further declared he was giving his guilty plea freely and voluntarily, and that he was pleading guilty because he was guilty. *Id*. at 3. Young does not contend that his guilty plea was conditional. Consequently, Young's present constitutional challenge, which is non-jurisdictional, was waived by his guilty plea.

---

made intelligently and voluntarily with the advice of competent counsel. Tollett v. Henderson, 411 U.S. 258, 266 (1973).

In <u>United States v. Brown</u>, 424 Fed. Appx. 909, 910 (11th Cir. 2011), the defendant pleaded guilty and was sentenced to a mandatory 60-month term of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(B)(vii), for possessing with intent to distribute 100 or more marijuana plants. Before his sentencing, the

defendant filed a motion seeking a declaration from the district court that 21 U.S.C. § 841(b)(1)(B)(vii) was unconstitutional because, among other things, "individuals who were similarly situated to him but who were located in states that had deregulated marijuana were not being prosecuted under the Controlled Substances Act. . . ." 424 Fed.Appx. at 911. The district court rejected the defendant's equal protection and selective prosecution claims on the grounds that he had waived those arguments by pleading guilty. (*Id*.) The Eleventh Circuit affirmed on appeal, holding that the district court correctly concluded that the defendant waived the argument when he entered his guilty plea. (*Id*. at 912). *See also* <u>United States v. James</u>, 424 Fed. Appx 856, 860 (11th Cir. 2011)(companion decision holding same). Likewise, in this case, Young's guilty plea, which was knowing, voluntary and counseled as per <u>Broce</u>, similarly forecloses his equal protection claim. *See* <u>Thompson v. Wainwright</u>, 787 F.2d 1447, 1460 (11th Cir. 1986) ("[T]he representations of the defendant as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding.").

Additionally, while Young asserted his equal protection and selective prosecution claims to the District Court, the claim was not pursued on appeal. Young acknowledges that he is procedurally barred from asserting this claim by the failure to pursue the matter on direct appeal. (Doc. 159 at 33-35). However, Young contends that he has overcome the procedural bar by showing that his appellate counsel was "objectively unreasonable in failing to raise [this] issue on appeal." *Id*. at 34, *citing* <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). In order to overcome the procedural bar in this case, however, Young must do more than show that "his counsel was objectively unreasonable." <u>Smith</u>, 528 U.S. at 285, *citing* <u>Strickland v. Washington</u>, 466 U.S.

14

668, 687-691 (1984). Young must "show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*, *citing* Strickland, 466 U.S. at 694. For the reasons set forth more fully below, Young has failed to show that, but for appellate counsel's failure to brief the equal protection and selective prosecution issues, he would have prevailed on his appeal. Young's knowing and voluntary guilty plea precluded these issues.[11]

B.    Ineffective Assistance of Counsel Claims.

1.    Sentencing and Appellate Counsel, Andrew Jones.

Young asserts that his appellate counsel, Andrew Jones, was ineffective because he failed to raise his equal protection claim on appeal regarding the United States' continued prosecution of marijuana as a Schedule I substance instead of a Schedule V substance in the face of its legalization by several states. (Doc. 159 at 10-11, 31-35). Although not clearly stated, Young also appears to argue that, as his sentencing counsel, Jones was ineffective because he failed to challenge the District Court's conclusion that "only Congress had the authority to rewrite the

---

[11] Young argues that his "waiver & procedural default . . . has no effect on [his] constitutional challenge issue & limited effect on the Selective prosecution issue" because the issues did not become ripe until he pled guilty and was sentenced. (Doc. 170 at 3, *citing* United States v. Bogle, 689 F.Supp. 1121 (S.D. Fla. 1988). In contrast to this case, however, Bogle addressed the constitutionality of the sentencing guidelines, not the underlying prosecution and challenge to a criminal statute. Consequently, the Bogle court held that "[t]he issue of the constitutionality of the Guidelines is ripe with respect to those defendants who have pleaded or have been found guilty [because] . . .[e]ach of these defendants has a sufficient stake in the outcome of this controversy so as to assure 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions'." 689 F.Supp at 1127, *quoting* Baker v. Carr, 369 U.S. 186 (1962). The court also explained that "[t]he ripeness doctrine, then, prevents 'the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements'." *Id.* at 1126-27, *quoting* Abbott Laboratories v. Gardner, 387 U.S. 136 (1967). Young's challenge to the constitutionality of the very criminal statute charged in the indictment was ripe at the time of his arrest and prosecution.

code." (Doc. 159 at 10). Young argues that, because the Attorney General was vested by Congress "with the authority to add drugs to, remove drugs from, or transfer drugs between the five schedules," he can be ordered by the Court "to remove marijuana from the federal lists of schedules in its entirety." (*Id*. at 10-11). For this proposition, Young relies on <u>United States v. Schrock</u>, 855 F.2d 327 (6th Cir. 1988), and <u>United States v. Allison</u>, 953 F.2d 870 (5th Cir. 1992). Young misconstrues both the Attorney General's and this Court's authority relative to the reclassification of controlled substances.

In <u>Allison</u>, the Fifth Circuit held that the procedure utilized when methamphetamine was rescheduled from a Schedule III to a Schedule II controlled substance was adequate. The Court described the procedure as follows:

> In 1970, Congress passed the Comprehensive Drug Abuse Prevention and Control Act, which delegated to the Attorney General authority to reclassify controlled substances, 21 U.S.C. § 811.
>
> Notice was published in the Federal Register at 36 Fed.Reg. 9563 by the Director of the Bureau of Narcotics and Dangerous Drugs (BNDD) proposing the transfer, among other things, of methamphetamine, from Schedule III to Schedule II of the 1970 Act. Later that reclassification was accomplished on July 7, 1971. See 36 Fed.Reg. 12734 (1971). Appellant contends that the Attorney General never delegated his authority to reclassify methamphetamine from a Schedule III to Schedule II to the Director of BNDD. In 1973, the Attorney General properly delegated his authority to the Drug Enforcement Administration (DEA). *See* Fed.Reg. 18380; 28 C.F.R. § 0.100. After the 1973 delegation, the Director of the DEA republished the result of the Director of the Bureau's acts in the Federal Register in 1974. See 39 Fed.Reg. 22142. Appellant contends that because the director of the DEA did not adhere to the required provisions of the 1970 Act when he republished the BNDD findings in 1974, methamphetamine has never been lawfully transferred from Schedule III to Schedule II.
>
> Whether or not DEA followed the procedures and made the findings required to reschedule methamphetamine, BNDD did so in 1971. *See* Fed.Reg. 9563 (1971) (notice of hearing regarding proposed rescheduling) 36 Fed.Reg. 12734 (1971) (report of hearing and findings, order rescheduling methamphetamine).
>
> The 1971 delegation provides:
>
> > "Subject to the general supervision of the Attorney General, the exercise of the powers and performance of the functions vested in the Attorney General by the Comprehensive Drug Abuse Prevention and Control Act of

1970 are assigned to, and shall be conducted, handled, or supervised by the Director of the Bureau of Narcotics and Dangerous Drugs." 28 C.F.R. § 0.100

We find that this delegation to BNDD was sufficient, and coupled with DEA's later republication of the results, properly classified methamphetamine as a schedule II controlled substance. United States v. Kendall, 887 F.2d 240 (9th Cir. 1989), United States v. Alexander, 673 F.2d 287 (9th Cir. 1982), *cert. denied*, 459 U.S. 876, 103 S.Ct. 168, 74 L.Ed.2d 139 (1982), United States v. Durham, 941 F.2d 886 (9th Cir. 1991).

Allison, 953 F.2d at 873-74. The Sixth Circuit in Schrock similarly held that "Congress vested the Attorney General with the authority to . . . alter the statutory schedules, so long as the change is effected in conformity with the rulemaking procedures of the Administrative Procedure Act, 5 U.S.C. §§ 551- 559, and in accordance with the factual findings required under [21 U.S.C. §] 812(b). Schrock, 855 F.2d at 331. Neither of these decisions authorizes the District Court in a criminal case to enjoin the Attorney General to remove marijuana from the statutory schedules of controlled substances or even to transfer it from one schedule to another.[12]

The Eleventh Circuit and various other courts have also consistently rejected arguments similar to Young's equal protection argument. *See e.g.*, Americans for Safe Access v. Drug

---

[12] Young also contends that the District Court should "give notice to the U.S. Attorney General under 28 U.S.C. 2403(a) which requires "ALL" federal courts to give notice to the Attorney General, if an act of Congress is challenged in public interest & to rule on the Constitution [sic] challenge." (Doc. 159 at 7). Young relies on Pleasant-El v. Oil Recovery Co., Inc., 148 F.3d 1300, 1302 (11th Cir. 1998), a civil case involving constitutional challenges to the standards and procedures employed in imposing and enforcing the penalty for late payment under the Longshore and Harbor Workers Compensation Act ("LHWCA") 33 U.S.C. §§ 901-950. However, the United States was not a party to that civil action, one of the prerequisites to 28 U.S.C. § 2403(a), which provides:

In any action, suit or proceeding in a court of the United States **to which the United States or any agency, officer or employee thereof is not a party**, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403(a) (emphasis added). Consequently, Young's reliance on §2403(a) is unavailing.

Enforcement Admin., 706 F.3d 438, 453 (D.C. Cir. 2013) (finding DEA's denial of petition to reclassify marijuana as a Schedule III, IV or V drug was not arbitrary or capricious); Brown, *supra*, 424 Fed. App'x at 911-912 (rejecting defendant's equal protection/selective prosecution claim, reasoning "Brown is not 'similarly situated' to people who have never been prosecuted for violating § 841(a) [and] [a]t a minimum, Brown needed to compare himself to other defendants convicted under § 841(a) for possessing at least 100 marijuana plants but were not subject [to the mandatory minimum sentence]."); United States v. Ernst, 857 F. Supp. 2d 1098, 1103-04 (D. Ore. 2012) (rejecting defendant's claim that continued classification of marijuana as Schedule I substance violated his due process and equal protection rights) (*citing* Gonzales v. Raich, 545 U.S. 1, 27 (2005)); Cracker v. Drug Enforcement Admin., 714 F.3d 17, 19 (1st Cir. 2013) ("Although considerable efforts have been made to reschedule marijuana, it remains a Schedule I substance."). Consequently, in this case, appellate counsel committed no error by failing to challenge the District Court's conclusion that only Congress had the authority to rewrite the criminal code as applied to Young, either during the sentencing or on appeal.[13]

### 2. Plea Counsel, Joe Jordan.

Young further argues that Joe Jordan, his counsel at the time of his plea, was ineffective because there existed a conflict of interest due to Jordan's past representation of Tammy Young in a different, although related, case. (Docs. 159 at 12-15, 170 at 7-8). Tammy Young was the wife of Young's nephew, Norman Young, and Tammy's co-defendant in the related case. (Doc.

---

[13] In this case, Young's appellate attorney, Jones, initially filed an Anders brief, but later filed a merits brief raising only one issue, the District Court's refusal to set aside Young's guilty plea. As stated previously, Young waived the right to appeal his equal protection claim because he pleaded guilty. Jones's performance could not, therefore, have been deficient in failing to pursue a claim that had been rendered meritless due to Young's waiver. Ferguson v. Sec'y for Dept. of Corrections, 580 F.3d 1183, 1201 (11th Cir. 2009) (appellate counsel not ineffective for failing to raise an issue on appeal that had been waived).

69 at2; Doc. 167 at 2, 5-6). The Eleventh Circuit has explained the burden a petitioner must meet to successfully establish an ineffective assistance of counsel claim based on a conflict of interest:

> Where an ineffective assistance of counsel claim is based on a conflict of interest, a petitioner 'must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance. . . 'An actual conflict' of interest occurs when a lawyer has inconsistent interests.'. . The conflict cannot be merely possible, speculative, or hypothetical. . .
>
> To distinguish between actual and possible conflicts of interest, we 'will not find an actual conflict of interest unless the defendant can point to specific instances in the record to suggest an actual conflict or impairment of his interests. . .. The defendant 'must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to himself. If he did not make such a choice, the conflict remains hypothetical. . . To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties.

McCorkle v. United States, 325 Fed.App'x 804, 808 (11th Cir. 2009)(internal citations, punctuation and brackets omitted). Also, "[i]f there is a guilty plea involved, this Court looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001).

Young now contends that Jordan coerced him to plead guilty (doc. 159 at 12-14), but there is no evidence in the record to support this contention.[14] Young concedes that Jordan's

---

[14] Young first sought to remove Jordan as his counsel in a "motion to reject plea agreement" filed on October 29, 2010 (doc. 62), shortly after the Court had postponed his sentencing from October 21, 2010 to November 10, 2010 (doc. 61). The matter came on for hearing on November 10, 2010, and, after being reminded that Jordan was privately retained by him, Young declined the Court's invitation to hire another attorney who could seek a continuance of his sentencing. (Doc. 126 at 2-3,10). Although Young generally contended that "I know I've got a conflict of interest, because my niece was represented by him" (*id.* at 3-4), the only thing Young thereafter discussed during the hearing was whether his sentence could go below the minimum mandatory 10 year sentence based on his contention that he has "done everything in my power to [cooperate with the government]" (*Id.* at 6). The Court reiterated what Young had been told twice at his plea, namely that "[t]he only person that controls the [sentencing Judge] going below 10 years is Mr. May [i]f he files a 5(k) motion saying you substantially cooperated" (*id.* at 6). Young next sought to remove Jordan by motion filed November 24, 2010 (doc. 67), which came on for (Continued)

representation of Tammy Young in a separate case ended 15 months before he pleaded guilty

(doc. 170 at 7).[15]  Young merely speculates that, if he had gone to trial, Tammy Young would

have been called as a witness against him because her plea agreement required her to cooperate

with the government (docs. 159 at 12, 170 at 7).  Although Tammy Young was named as a co-

conspirator in the factual resume executed by David Young in connection with his plea

agreement (doc. 43 at 1), she was not named as a co-defendant in his case and her only mention

of David Young in either case is in the following paragraph contained in a lengthy interview

form completed by Drug Enforcement Administration agents on March 27, 2007, prior to her

guilty plea and nearly two and a half years before Young was arrested:[16]

> Tammy identified **Tim Cox** via a photograph, # 30, showed to her by Agents.
> She stated that she did not know his name, but that Cox was a close associate of
> **David Young**, Norman's uncle.  She said that about two years ago, Cox had come
> to her property with David on at least one occasion, and had purchased 2 horses
> from Tammy.  She said that David was in trouble for marijuana dealings and that
> he was hiding from law enforcement.  (**Agent's Note**: Tammy identified David
> Young  via a photograph, # 31, in a set of photographs shown to her by Agents.)
> She said David's wife, Cherie, lives with her sister in the Atlanta, GA area and
> may be involved in the "Blooming Lollipops" franchise.

---

hearing on January 24, 2011, at which Jordan orally requested leave to withdraw due to "a breakdown in communication" (doc. 137).  The Court granted both motions (*Id*. at 2-3).  The Court then granted Young's motion to appoint counsel and appointed Jones (*id*. at 7-9).  Young's newly appointed counsel attempted to have the guilty plea set aside on the grounds that the government had reneged on its agreement to file a § 5K1.1 departure motion (doc. 79).  No contention or evidence of impropriety by Jordan was asserted.

[15] *See* United States v. Tammy Forbes Young, Criminal No. 06-00277-WS.  Tammy Young pled guilty on September 18, 2007 (doc. 110), and was sentenced on September 15, 2008 to 18 months incarceration (doc. 188).  The United States never filed a § 5K1.1 or Rule 35 motion on her behalf for a reduction in sentence but did allow her to plead to an information charging her with conspiring with unknown individuals with the intent to distribute an unspecified quantity of marijuana.  Doc. 167 at 5-6.

[16] David Young was not arrested on the indictment in this case until August 26, 2009. (Doc. 21).

(Doc. 167-1 at ¶ 12)(emphasis in original).  Young has not made a sufficient showing of inconsistent interests to support the existence of an actual conflict.[17]  He has failed to establish that by formerly representing Tammy Young, Jordan "made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client that Jordan could have pursued a plausible alternative strategy, that this alternative strategy was but harmful" to Young.  McCorkle, 325 Fed.App'x at 808.  Nor has Young offered any evidence of the existence of an alternate strategy, or that the alternative strategy was not followed because it conflicted with Jordan's external loyalties.[18]  Id.  Young has, therefore, failed to establish that he is entitled to habeas relief on the ground that his plea counsel, Jordan, was ineffective.

Young also appears to contend that Jordan was ineffective because he failed to secure certain terms in Young's plea agreement.  (Doc. 159 at 19, 60-62).  Young, in sum, challenges the fact that he was found responsible for a minimum of 100 kilograms of marijuana, the predicate for the Court's imposition of a 10-year mandatory minimum sentence.   Young argues:

> Under the plea agreement, the government agreed to dismiss count 2 & 3 for a plea of guilt to count 1 of the indictment - conspiracy.  This denied the government to use [sic] the statutory penalties under the dismissed counts.  The government used the factual resume as a means to satisfy the statutory penalty of 841(b)(1)(B) using wrappings from marijuana commensurate to 500 lbs of marijuana (EXHIBIT N).  The government tried to use the overall amount of the conspiracy that included the conspiracy of Norman Young, beginning in 2004.  The court made the determination that the first acts committed by Petitioner began in 2005 (EXHIBIT O), because the government did not produce the witness, Timothy Cox, to provide corroborating testimony to acts prior to 2005.  The 500

___

[17] Young contends that, if a letter (doc. 159 at 78-79) from the United States to his counsel dated October 15, 2009, setting forth "the ground rules" for an "off-the-record proffer or discussion" that Young was interested in having with the investigative agents had been signed by Young and his counsel, "the factual resume would not contained [sic] the information including evidence from [Tammy Young's] plea of guilt of another conspiracy, separate from Petitioners [sic]" (doc. 159 at 15).  Young has not identified what specific information would have been excluded from his factual resume had the subject letter been signed and has given no evidence that he ever made an "off-the-record proffer" to agents as discussed in the letter.

[18] Technically, the Court need not reach this prong because Young failed to establish the first prong, evidence that Jordan had an actual conflict of interest.

lbs alleged in the factual resume was part of the Norman young conspiracy. Therefore, Petitioner could only be held accountable for his part of the 500 lbs, which would have been less than 100 lbs, & below the required trigger of 841(b)(1)(B).

(Doc. 159 at 19-20).[19]  The Court, however, properly based its determination that Young was accountable for at least 100 kilograms of marijuana in connection with his conspiracy upon Young's own admission as set forth in the factual resume he executed and affirmed on the record when he pled guilty.[20]  (Doc. 117 at 5; Doc. 43 at 13-14).  Neither Young, nor Jordan as his attorney at the time of his plea, "[had] the right to obtain a plea agreement with terms tailored to his liking."  Hernandez v. United States, 2012 WL 728208, *2 (M.D. Fla. March 6, 2012).  This is because "the decision whether to offer a plea agreement and what terms to include in that agreement are matters of prosecutorial discretion."  Id., citing Weatherford v. Bursey, 429 U.S. 545, 561 (1977)("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.").  In addition to the government's discretion regarding the terms of the plea agreement, Young was clearly on notice before he entered his plea that he was facing a mandatory 10 year sentence based on the agreed facts concerning his participation in the conspiracy, which was subject only to the government's willingness, in its sole discretion, to file a 5k1.1 motion for a reduction in sentence. (See, Doc. 116 at 4-5, 8).  Young's challenge is, therefore, no more than a speculative and unsupported claim that Jordan should have bargained

---

[19] Young's attorney at sentencing, Andrew Jones, presented Young's argument after the Court refused to allow Young to present the argument himself. (Doc. 117 at 2).  Jones was unable to present any authority for this position beyond the statute itself, namely 21 U.S.C. § 841(h).  (Id. at 3).

[20] Young also contends that Jordan failed to protect him "from allegations that could have been proven false at a jury trial exonerating Petitioner."  (Doc. 159 at 30).  In support of this proposition, Young refers to an investigative report and "the fact that the [marijuana] plants were not found on Petitioners property, but were found 2 miles from that property on Larson & McGowen timber co. land & the wrappings for the alleged 500 lb. was also recovered from property owned by the Mobile City Water Board, not on Petitioner personal property."  (Id., citing "exhibit F")("[A] supplemental report dated September 6, 2005" which only discusses evidence concerning the owner of "two Honda Water pumps" and gives no further information.).  Young's unsupported allegations do not establish that he would have been exonerated had he gone to trial, particularly in view of his admissions of guilt on the record.

for more favorable terms, and cannot support an ineffective assistance of counsel claim. *See* Hernandez, 2012 WL 728208 at \*2 ("Vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim); Williams v. United States, 2011 WL 3268308, \*5 (M.D. Fla. Aug. 1, 2011) (same); Chavez v. Secretary Fla. Dep't of Corrections, 647 F.3d 1057, 1061 (11th Cir. 2011) ("The allegations must be factual and specific, not conclusory."). Young has, therefore, failed to establish either prong of the Strickland test as to this particular ineffectiveness claim.

C.    Hearing pursuant to Rule 44(c).

For the reasons set forth above, Young has failed to establish that any Rule 44(c) conflict hearing was required. Although Jordan represented Tammy Young 15 months prior to his representation of David Young, Tammy Young was not a co-defendant and Jordan's representation of David Young did not constitute an actual conflict of interest. Young bore the burden to "show an 'actual conflict,' because a speculative or merely hypothetical conflict of interest does not yield a Sixth Amendment violation." Aguilar-Garcia, *supra*, 517 Fed.Appx. at 882, *citing* Reynolds, 253 F.3d at 1342–43. This he failed to do. The cases relied upon by Young are inapposite. *See e.g.*, Oliver v. Wainwright, 782 F.2d 1521, 1524 (11th Cir. 1986)("Joint representation of co-defendants is not a per se violation of the sixth amendment right to effective assistance of counsel [and] [i]n order to establish a sixth amendment violation, a defendant . . . 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance'."); Porter v. Wainwright, 805 F.2d 930, 939 (11th Cir. 1986)(Evidentiary hearing required because counsel's former client actually testified against counsel's present client and counsel failed to cross-examine the former client regarding the consideration received for the testimony); United States v. Mari, 526 F.2d 117, 119 (2nd Cir. 1975)(Petitioner, who pleaded guilty voluntarily after being fully informed of consequences and after determinations by trial judge that no conflict of interest existed because of joint representation of petitioner and

codefendant and that parties had no valid objection to joint representation, failed to show actual prejudice resulting from attorney's joint representation and thus was not denied effective assistance of counsel by such representation.). The District Court did not, therefore, err by failing to conduct a Rule 44(c) hearing. The *en camera* hearing conducted by the District Court on November 10, 2010 (doc. 126) when Young first sought to remove Jordan and set aside his plea illustrates the lack of evidence regarding any conflict.

      D.     <u>Retroactive Application of *Alleyne v. United States*</u>.

Young further argues that his conviction and sentence should be vacated and set aside based on a retroactive application of <u>Alleyne v. United States</u>, --- U.S. ---, 133 S. Ct. 2151 (2013). In <u>Alleyne</u>, the rule in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 483 (2000)("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt"), was extended to facts that not only increase the statutory maximum punishment for a crime, but also increase the statutory minimum. 133 S.Ct. at 2155. Consequently, by extending <u>Apprendi</u>, any fact (other than the fact of a prior conviction) that increases a statutory minimum sentence must now be considered "an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id*. The Supreme Court thus overruled <u>Harris v. United States</u>, 536 U.S. 545 (2002), in which it had held that <u>Apprendi</u> did not preclude the use of facts found by a judge at sentencing to increase a defendant's mandatory minimum sentence.

Young specifically argues that his conviction and sentence should be overturned in accordance with <u>Alleyne</u> because the amount of marijuana attributed to him, as well as his previous conviction giving rise to the § 851 enhancement, were elements of his offense that should have been proven to a jury. (Docs. 159 at 16-21; 162 at 2-3). Young's position is without merit. First, <u>Alleyne</u> is not retroactive to cases on collateral review. This decision does not represent a right that "has been newly recognized by the Supreme Court and made retroactively

24

applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).  The Supreme Court did not

expressly declare that Alleyne is to be retroactively applied to cases on collateral review. *See*

Tyler v. Cain, 533 U.S. 656, 663 (2001)("the Supreme Court is the only entity that can 'ma[k]e'

a new rule retroactive [and] [t]he new rule becomes retroactive, not by the decisions of the lower

court or by the combined action of the Supreme Court and the lower courts, but simply by the

action of the Supreme Court."); *see also* Dodd v. United States, 545 U.S. 353, 357 (2005)

(limitations period under § 2255(f)(3) runs from the date of the Supreme Court decision "initially

recogniz[ing]" the right in question).  The Supreme Court did not apply Alleyne retroactively for

purposes of collateral review because, in that decision,  the Court was not adopting a substantive

rule which "alters the range of conduct or the class of persons that the law punishes[,]" but,

instead, merely adopted a procedural rule that "regulate[s] only the ***manner of determining*** the

defendant's culpability." Schiro v. Summerlin, 542 U.S. 348, 353 (2004) (emphasis in original),

*citing* Bousley v. United States, 523 U.S. 614, 620-621 (1998); Saffle v. Parks, 494 U.S. 484,

494-495 (1990).  New procedural rules do not apply retroactively to cases on collateral review

unless they qualify as "watershed rules of criminal procedure" implicating "the fundamental

fairness and accuracy of the criminal proceeding." Saffle , 494 U.S. at 495; *see also* Summerlin,

542 U.S. at 352 (a "watershed" rule must be one that "necessarily carry a significant risk that a

defendant stands convicted of 'an act that the law does not make criminal' " or faces a

punishment that the law cannot impose upon him" and must be a rule "without which the

likelihood of an accurate conviction is ***seriously*** diminished") (emphasis in original).

The Supreme Court has already determined that rules based on Apprendi do not apply

retroactively. *See generally* Summerlin, 542 U.S. at 348; *see also* McCoy v. United States, 266

F.3d 1245, 1258 (11th Cir. 2001)("[T]he new constitutional rule of criminal procedure announced

in Apprendi does not apply retroactively on collateral review."). Similarly, several federal courts

have now determined that Alleyne does not retroactively apply to cases on collateral review. *See*

Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013) (The fact that Alleyne is merely an "extension of Apprendi . . . implies that the Court will not declare Alleyne to be retroactive"); Dilbert v. United States, 2013 WL 540844, *3 (M.D. Fla. Sept. 25, 2013) ("[T]he rule announced in Alleyne is not retroactive to cases on collateral review."); Light v. Martin, 2013 WL 4804889, *4 (S.D. Miss. Sept. 9, 2013) ("[S]ince Apprendi is not retroactive on collateral review, it is doubtful that Alleyne will be."); United States v. Springs, 2013 WL 4042642, *4 (W.D.N.C. Aug. 9, 2013)(holding that petitioner was not entitled to collateral relief under Alleyne); United States v. Eziolisa, 2013 WL 3812087, *3 (S.D. Ohio July 22, 2013) (holding that Alleyne does not apply retroactively because it does not adopt a "watershed" rule); Luney v. Quintana, 2013 WL 3779172, *3 (E.D. Ky. July 18, 2013) (noting that "there is no indication in . . . Alleyne that the Supreme Court made [that] holding [] retroactive to cases on collateral review.").

Even if Alleyne could be applied retroactively, it nevertheless does not provide relief to Young because he has admitted in the plea agreement and colloquy to the previous drug conviction as well as to the drug amount, which required the imposition of his mandatory 10-year sentence. *See* United States v. Wimberly, 2013 WL 3214988, *1 (6th Cir. June 26, 2013)("[T]he holding of *Alleyne* is irrelevant to this case because Wimberly entered a guilty plea and specifically admitted discharging a firearm during the credit-union robbery, the fact used to support his mandatory minimum sentence."); Dilbert, 2013 WL 540844 at *3 ("[E]ven if Alleyne can be applied retroactively to cases on collateral review, it is irrelevant to Petitioner's case [because,] [d]uring his plea colloquy, Petitioner admitted to the fact used to support his ten-year minimum mandatory sentence . . . , i.e., smuggling five kilograms or more of cocaine."); United States v. Fredriksen, 2013 WL 4776314, *2 n. 4 (S.D. Ala. Sept. 5, 2013) ("[I]t is doubtful that Alleyne affords Fredriksen any relief [because, in part,] she chose not to proceed to trial before a jury and, instead, entered a counseled plea of guilty.").

For this reason, the assistance provided to Young by his sentencing and appellate counsel, Jones, was not ineffective. Young is, therefore, not entitled to habeas relief on this ground and his motion for such is due to be denied.

E.       Department of Justice Policy Change.

On August 21, 2013, Young sought to amend his § 2255 motion by asserting a new claim predicated on an alleged "proclamation" of the United States Attorney General.[21] (Doc. 164). Although this motion was denied (doc. 165), the United States has elected to address it in its opposition brief. (Doc. 167 at 21-22). Young has also replied (doc. 170 at 23-24, 33), objecting to the undersigned's denial of his motion to amend on the grounds that Young "failed to establish, among other things, that this alleged 'change in notice' pertaining to future indictments, even if implemented, could have any impact on the conviction and sentence he challenges in this case" (doc. 165). Young relies on an undated newspaper clipping reporting:

> Last month, [Eric] Holder said certain low-level, non-violent drug offenders – those without ties to large-scale organizations, gangs or cartels – no longer will be charged with offenses that impose severe mandatory minimum sentences.

(Doc. 170 at 33).

Young has failed to establish that this alleged change in policy could have any impact on his conviction and sentence.[22] *See* United States v. Addonizio, 442 U.S. 178, 185-87 (1979) (petitioner's allegation that post-sentencing change in policy of the United States Parole Commission prolonged his imprisonment beyond the period intended by the sentencing judge did

---

[21] According to the Defendant, "Attorney General, Eric Holder, has issued a proclamation to his U.S. Attorney's to refrain from alleging drug quantities or penalty statutes in the indictments for current & future prosecutions, which in turn, leave the drug amount & penalty to be imposed solely in the Federal Judges discretionary authority." (Doc. 164 at 1).

[22] By his own admissions, Young's ties to his nephew's extensive marijuana operation make it questionable that he would fall within the class of drug offenders referred to by Holder in the aforementioned newspaper clipping. (Doc. 170 at 33).

not support a collateral attack of the sentence under § 2255); <u>United States v. Roy</u>, 2010 WL 391825, *2 (W.D. Va. Feb. 3, 2010) (change in DOJ policy regarding sentencing disparity in crack cocaine and powder cocaine cases was not a ground for § 2255 relief); <u>Campbell v. United States</u>, 2009 WL 3415162, *2 (E.D. Tenn. Oct. 19, 2009) (same and noting that "the recent changes in the Department of Justice policy regarding sentencing disparity between crack cocaine and powder cocaine cases [do not] create a new and constitutional right for criminal defendants to file a § 2255 motion."). Consequently, Young has failed to establish a right to seek resentencing based on the alleged change in the Department of Justice's policy regarding mandatory minimum drug sentences, or even that such a claim is cognizable in a collateral attack under § 2255.

<u>Petitioner is not entitled to a Certificate of Appealability</u>.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. § 2255; Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "[A] COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, (2000); <i>see</i> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were "adequate to deserve encouragement to proceed further'."). Inasmuch as it is clear that Young's claim for relief made pursuant to § 2255 is without merit, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that the petitioner should be allowed to proceed further. *See* Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

In the instant case, Petitioner's claims do not warrant the issuance of a Certificate of Appealability. Petitioner's claims are without merit. Therefore, no reasonable jurist could differ on the appropriate disposition of the petition on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability. Because Petitioner is not entitled to a Certificate of Appealability, any request for leave to appeal *in forma pauperis* is also due to be denied.

## CONCLUSION

For the reasons stated above, it is the recommendation of the undersigned Magistrate Judge that Young's § 2255 motion be **DENIED**. It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be **DENIED**.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this   16th   day of January 2014.


                              /s/ Katherine P. Nelson
                              KATHERINE P. NELSON
                              UNITED STATES MAGISTRATE JUDGE